J-S09012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3039 EDA 2023 |

Appeal from the Order Entered November 6, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001357-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: I.M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3040 EDA 2023 |

Appeal from the Decree Entered November 6, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000599-2022

BEFORE: PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED APRIL 04, 2024**

In these consolidated appeals, M.B. ("Mother") appeals from the decree and order entered in the Court of Common Pleas of Philadelphia County which granted the petitions of Philadelphia County Department of Human Services ("DHS") to change the permanency goal of I.B. (d.o.b. 7/2019) ("Child") to adoption and involuntarily terminate Mother's parental rights to Child pursuant

to Sections 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2511-2514.[1] We affirm.

Mother is Child's biological mother. Child and Mother came to DHS's attention in November 2020 when DHS received information that Mother lived in a shelter, often left Child unattended, suffered from mental illness, and used illegal drugs. Shortly thereafter, DHS obtained an order of protective custody and placed Child in foster care after Mother presented at Einstein Medical Center hallucinating, believing her death was imminent, and asking hospital staff to take care of Child. When DHS visited her the same day, Mother believed that she had died. Child exhibited signs of petit mal seizures and did not display age-appropriate behavior and skills.

In December 2020, DHS and the Community Umbrella Agency ("CUA") established Mother's single case plan ("SCP"), with family reunification as the permanency goal. Mother was required to ensure Child's basic needs were met and Child's medical, dental and vision appointments were current. Mother also was to be available to the CUA, comply with the CUA's services, apply for Child's services, and participate in a parenting program. Objectives for Mother's mental health, visitation and compliance with court-ordered objectives also were added by the court in December.

---

[1] The court also terminated the parental rights of Child's father and unknown putative father. They have not appealed.

On May 19, 2021, Child was adjudicated dependent and committed to DHS's custody. The court ordered Mother to comply with mental health, substance abuse, and disability related assessments and services. At all permanency review hearings in 2021, 2022, and 2023, the court found Mother non-compliant with the permanency plan and that she had not made any progress toward alleviating the conditions that led to Child's placement.

On October 27, 2022, DHS filed petitions to terminate Mother's parental rights and to change Child's permanency goal to adoption. The following individuals testified on behalf of DHS at the goal change/termination of parental rights ("TPR") hearing: Michael Flowers, Child's proposed placement resource; Katina Alexander, Interim Supervisor, Children's Crisis Treatment Center (CCTC); Katherine D'Amora, DHS psychologist; Lashonna McRae, CUA case manager; Adrien Gale, CUA case manager; Latoya Davenport, resource parent; and Janice DeShields, Child Advocate social worker. The court apparently interviewed Child *in camera*, but the interview was not recorded or transcribed. Mother testified on her own behalf. The following testimony was provided.

Gale testified that during the previous two years, Child's placement was changed four times, and included the removal from her current foster parent, Davenport, due to allegations of abuse, and then Child's return to her after the allegations were unfounded. Child transitioned well to each of the placements. Child has been diagnosed with adjustment disorder with

disturbance of emotion and conduct. Child is aggressive, spits on others, chokes peers, and often screams. Child needed eye surgery at one point, but it was delayed for five months because the CUA was unable to find Mother to sign the consents for anesthesia for the surgery.

Gale testified she was the individual who advised Mother of Mother's SCP and court-ordered objectives in December 2020. Gale has reached out to remind Mother of her objectives, which included visitation, but Mother has not requested or tried to arrange visitation with Child. According to Gale, Mother failed to meet any of her objectives or to alleviate the conditions that necessitated Child's continued placement. Mother has not obtained suitable housing and Gale could not comment on Mother's current living arrangements since Gale was not able to assess the accommodations at Ruth's House (the mental health treatment facility where Mother was enrolled at the time of the TPR hearing). Mother never provided the CUA with proof of completion of any mental health treatment program and failed to complete any of her substance abuse objectives, which were intended to address Mother's history of Percocet abuse.

Flowers is the husband of Child's maternal aunt. Flowers and his wife have custody of Mother's fifteen-year-old severely autistic son. The Flowers wish to adopt Child and are prepared to address Child's adjustment disorder diagnosis. During this case, Flowers and his wife have had sixteen virtual and

three in-person visits with Child. Gale and McRae, the CUA case manager supervisor, have no concerns about the Flowers as adoption resources.

Davenport, Child's current resource parent, testified Child was placed in her care when Child was approximately seventeen months old. Child was removed from her home for over a year after DHS received a report of abuse, which was later determined to be unfounded. Davenport has two sons, ages nine and thirteen, who live in her home. Although Child is aggressive with the younger son, Davenport said he does not retaliate and hit her back.

According to Davenport, Child is bonded with her. Alexander, the supervisor from CCTC, believes severing the bond would have a detrimental impact on Child, but that a family that "commit[s] to her[,] … [has] some type of bond with her" and attends to her needs would be an appropriate placement. N.T. TPR Hearing, 11/6/23, at 58.

DeShields, child advocate social worker, saw Child more than seventeen times over the course of the case. At first, Child did not walk or talk and was developmentally behind for her age. Child progressed in Davenport's care and regressed when she was temporarily removed.

Mother conceded she has not completed her objectives for reunification, but she does not want her rights to Child terminated because her failure to achieve her objectives was due to her chronic homelessness and disability. Mother also attributed her long absences from the case and lack of contact with the CUA to homelessness, although she acknowledged she knew the

CUA's contact information. *Id.* at 188. Mother also stated her lack of contact with the CUA was due to her incarceration from October 2022 to May 2023, but she also testified she used her telephone privileges to stay in contact with the CUA and her dependency court attorney.

Mother said she generally failed to reach out to the CUA because she was "too busy trying to get [her] mental health together[.]" *Id.* at 188-89. Mother stated she has been diagnosed with depression, bipolar disorder, and schizophrenia, and that as of June 1, 2023, she was engaged in mental health treatment. However, she was unable to provide documentation to confirm either her diagnoses, her participation in the mental health program, or an anticipated discharge date from the program. Mother does not plan to continue her mental health treatment because she "battle[s] homelessness so much." *Id.* at 191. Mother asserted that she submits monthly drug screens, which have all had negative results.

Mother agreed she only participated in two virtual visits with Child in 2023 and had last seen Child approximately 18 months prior to that. Mother claimed she missed visits because she incorrectly responded to the CUA's emails requesting confirmation of them. Mother stated that she did not know where Child was enrolled in school, the name of Child's primary care physician, when Child was last seen by a doctor, or about Child's adjustment disorder diagnosis, which Mother stated she learned for the first time in court that day.

Gale opined the termination of Mother's parental rights to free Child for adoption was in Child's best interest, particularly because Mother does not meet any of Child's needs and Child does not look to her as a parental resource. Gale opined she did not believe that reunification was a viable goal because Child could not safely be returned to Mother's care due to Mother's ongoing issues, including with her mental health and housing. Gale stated she did not believe Child would suffer irreparable harm if Mother's parental rights were terminated because Child does not have a bond with Mother, due to Mother's lack of consistent contact with Child. Gale further noted that the Flowers and Davenport have each expressed a desire to adopt Child.

At the close of the hearing, the orphans' court found that DHS met its burden of providing clear and convincing evidence to support its petitions. The court entered an order changing Child's permanency goal to adoption and a decree terminating Mother's parental rights pursuant to Sections 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b) of the Pennsylvania Adoption Act.[2] Mother timely appealed and filed a contemporaneous statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i).

Mother argues: (1) the orphans' court committed an abuse of discretion and an error of law when it concluded DHS presented clear and convincing

_____

[2] The court held the decision to remove Child from Davenport's home under advisement. A hearing has been scheduled to determine whether it would be in Child's best interest to be adopted by Davenport or the Flowers.

evidence that the termination of Mother's parental rights was in Child's best interest pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5) and (a)(8) and § 2511(b); and (2) the orphans' court abused its discretion in changing Child's goal to adoption.[3]

Our scope and standard of review are as follows:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>
> > We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence

_____

[3] In her statement of questions involved, Mother also claims that the orphans' court erred by failing to appoint separate legal counsel for Child. This issue is waived for Mother's complete abandonment of it in the argument section of her brief. Even if the issue were not waived it lacks merit. The record reflects the court appointed Child's guardian *ad litem* ("GAL") as Child's legal counsel after the GAL stated he agreed with DHS's position and there was no conflict between Child's best and legal interests. We discern no error. **See In re T.S., E.S.**, 192 A.3d 1080, 1088 (Pa. 2018) (in accordance with Section 2313(a) of the Adoption Act, a guardian *ad litem* may represent a child's legal interest where there is no conflict between child's legal and best interests).

presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). We examine the orphans' court's finding that DHS provided clear and convincing evidence to support termination pursuant to Section 2511(a)(1). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that in order to affirm the termination of parental rights, this Court "need only agree with [the orphans' court's] decision as to any one subsection" of Section 2511(a)).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511 of the Adoption Act, which provides, in pertinent part:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental,

- 9 -

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1), (b).

A petitioner must satisfy both Sections 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021) (citation omitted).

To establish grounds for termination pursuant to section 2511(a)(1), "[a] petitioner ... must demonstrate by competent, clear and convincing evidence, [that] [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." *C.M.*, 255 A.3d at 363-64 (citation, footnote, and internal quotation marks omitted).

[O]ur courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. … The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

- 10 -

***In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021) (brackets, internal citations and quotation marks omitted).

When considering the applicability of Section 2511(a)(1), the orphans' court should consider the entire history of the case rather than mechanically apply the statutory six-month requirement. ***See C.M.***, 255 A.3d at 364. This includes consideration of "the parent's explanation [and] the post-abandonment contact between the parent and child[,]" including the parent's efforts to maintain contact. ***Id.*** (citation omitted).

Instantly, in concluding that DHS provided clear and convincing evidence to support the termination of Mother's parental rights under Section 2511(a), the orphans' court explained:

> … I don't take pleasure in having to reach the decision that the [c]ourt is reaching today. But [DHS] has met its burden to involuntarily terminate … Mother's rights ….
>
> I am sympathetic to the situation that Mother has been living through and commend her for now stepping forward to avail herself to get the help she needs. But there has been no indication that she is a potential reunification source for [Child] today, nor has she been a potential reunification resource throughout the life of this case. And [Child] came into care over 35 months ago.
>
> \*   \*   \*
>
> This petition was filed a year ago. In the six months prior to October of 2022, … Mother … [failed to] demonstrate[] any purpose or any ability to parent this [C]hild. In fact, [she] refused to perform parental duties for the six months immediately preceding the filing of the petition.
>
> … [Mother] didn't even reach out to even see [C]hild. In fact, she hasn't seen [C]hild up until more recently, for more than a year.

* * *

> … [T]here has been a repeated and continued incapacity and inability to parent [C]hild … or provide any necessary care for this [C]hild's physical or mental wellbeing for the life of this case. And there is no indication that the causes of the incapacity … would be remedied by [Mother] …, as this [C]hild has again been in care for more than 35 months. …

N.T. TPR Hearing, 11/6/23, at 223-25.

We commend the orphans' court for its sensitive review of Mother's history of homelessness and drug dependency. We certainly join in the nature of these remarks. That being said, the record aptly supports the orphans' court's findings. Mother admitted that DHS took custody of Child in December 2020 because Mother was hospitalized for her mental health and there was no one to care for Child. **See id.** at 185-86. Child was adjudicated dependent due to DHS's concerns about Mother's mental health, her use of drugs and alcohol, her housing instability and Mother's poor supervision of Child. **See** Dependency Petition, 12/29/20, at ¶ 5f; Order of Adjudication and Disposition, 5/19/21, at 1-2. Gale testified she told Mother about all her SCP and court-ordered objectives in December 2020; despite Mother's claim she did not realize visitation with Child was a reunification objective. **See** N.T. TPR Hearing, 11/6/23, at 195, 199.

Mother has been completely noncompliant with the permanency plan throughout the life of this case and has not made any progress in alleviating the conditions that led to Child's removal. **See** Permanency Review Orders,

12/20/21, 3/21/22, 6/13/22, 8/29/22, 11/21/22, 1/30/23, 5/8/23. Mother conceded she did not complete her objectives for reunification but blamed her failure to complete them on her homelessness, mental health issues, and brief incarceration. *See* N.T. TPR Hearing, 11/6/23, at 188-89, 196-97.

Although the hospital discharged Mother only five days after her December 2020 mental health admission, Mother did not contact the CUA to ask for Child's return because "she lost her phone" and her sister was in contact with the CUA and keeping her informed about the case. *See id.* at 187-88. After Gale stayed in contact with Mother for approximately fifteen months, Mother disappeared from March 2022 until December 2022, when Gale learned Mother was incarcerated. When Gale reminded Mother of her objectives in December 2022, including visitation with Child, Mother again did not request any visits. *See id.* at 202. Gale explained Mother had not seen Child for 18 months prior to Mother's two visits with Child in early 2023, which was after the petitions had been filed. *See id.* at 202-03. Mother did not dispute this version of her visitation history, stated she does not know what school Child is enrolled in, the name of Child's primary care doctor or when Child was last seen by a doctor, and that she did not know Child had been diagnosed with adjustment disorder until court that day. *See id.* at 196-98.

Mother never obtained suitable housing and Gale was unable to assess Mother's living accommodations at Ruth's House. *See id.* at 203-04. Gale stated that, although Mother provided general information about the Ruth's

House program, Mother did not provide the CUA with proof of completion of any mental health program. ***See id.*** at 204. Although Mother claimed to be engaged in mental health treatment at Ruth's House for her diagnoses of depression, bipolar disorder, and schizophrenia, Mother provided no documentation of her diagnoses, her participation in the Ruth's House program, or her anticipated discharge date. ***See id.*** at 189-91, 213. Mother admitted she did not successfully complete a mental health program, and she testified she did not intend to do so because of her lack of either a home or a car. ***See id.*** at 191-92. Mother provided no documentation to support her allegation that she completed the ordered psychological evaluation. ***See id.*** at 194.

Based on the foregoing, we agree with the orphans' court that DHS provided clear and convincing evidence to satisfy the termination of Mother's parental rights pursuant to Section 2511(a)(1) of the Adoption Act.

Mother also argues the orphans' court erred in finding that termination of her parental rights is in Child's best interest pursuant to Section 2511(b). Mother maintains that she and Child "could have meaningful visits" since Mother "has now found stable housing and is now receiving mental health treatment." Appellant's Brief, at 19.

Pursuant to Section 2511(b) of the Adoption Act, a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S.A. § 2511(b).

Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.

*In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (citation omitted). "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citation omitted).

The orphans' court found Child would not suffer irreparable harm if Mother's parental rights were terminated because Mother and Child do not have a parental bond. *See* N.T. TPR Hearing, 11/6/23, at 228. The court observed that Child had only recently seen Mother at a few virtual visits and that Child neither looks at Mother as her parent nor seeks Mother out for her daily needs. *See id.*

We discern no abuse of discretion. Mother does not identify any bond between her and Child and our independent review of the record confirms the court's inference that none exists. Gale opined that terminating Mother's parental rights is in Child's best interest since Mother does not meet any of Child's needs, fails to provide Child with safety and stability, and Child does not look to her as a parental resource. *See id.* at 212. Gale stated she did not believe Child would suffer irreparable harm if Mother's parental rights were terminated because Child does not have any bond with Mother due to Mother's

lack of consistent contact with Child. **See id.** at 21-13. Gale further noted that Child has multiple potential adoption resources. **See id.** at 209-10.

Mother maintains that Child told the court in an off-the-record *in camera* discussion that she does not want Mother's rights terminated. However, other than Mother's bald assertion that this is what Child said, there is no record evidence to support this claim. Even if Child did make the statement, we note that it is not availing. Certainly, it did not change the analysis of the Orphans' Court.

A "child's preferred outcome is not controlling, especially where th[e] [C]hild is under twelve, and … her consent is not necessary to effectuate an adoption." **Interest of D.R.-W.**, 227 A.3d 905, 916 (Pa. Super. 2020) (citation omitted); **see** 23 Pa.C.S.A. § 2711(a) ("[C]onsent to an adoption shall be required of ... [t]he adoptee, if over 12 years of age.").

Child is approximately four years old. Her alleged preference is at odds with the evidence of record that shows she barely saw Mother since she her removal from Mother's care over three years ago, and the testimony is that termination of Mother's parental rights is in Child's best interest. It was within the court's discretion to give Child's alleged preference little weight.

Based on the foregoing, the record supports the court's finding that termination of Mother's parental rights is in Child's best interest pursuant to Section 2511(b). Mother's challenge to the termination of her parental rights lacks merit.

Mother also argues the court erred in changing Child's permanency goal to adoption because "reasonable efforts over a period of time would allow [M]other to stabilize …, complete more visits and work on her other objectives." Appellant's Brief, at 20-21.

As a preliminary matter, in light of our decision to affirm the court's termination decree, this issue is moot. *See Interest of D.R.-W.*, 227 A.3d at 917; *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citations omitted). Even if it were not moot, this issue would not merit relief.

We review goal change orders for an abuse of discretion. *See Interest of D.R.-W.*, 227 A.3d at 917. The focus of "goal change proceedings, is on the safety, permanency, and wellbeing of the child and the best interests of the child must take precedence over all other considerations." *Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019) (citation omitted). Section 6351(1) of the Juvenile Act provides, in pertinent part, that, when considering a petition for a goal change, the orphans' court must consider, in pertinent part:

> (1) The continuing necessity for and appropriateness of the placement.

> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4)  The appropriateness and feasibility of the current placement goal for the child.

\*  \*  \*

(6)  Whether the child is safe.

42 Pa.C.S.A. § 6351(f)(1)-(4), (6). "Once the court makes these findings, it must determine whether reunification, adoption, or placing the child with a legal guardian is best suited to the child's safety, protection, and physical, mental and moral welfare." *In re K.J.*, 27 A.3d 236, 242 (Pa. Super. 2011) (citation omitted); *see* 42 Pa.C.S.A. § 6351(f.1). "The [C]ourt cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of J.M.*, 991 A.2d 321, 325 (Pa. Super. 2010) (citation omitted).

Instantly, the evidence supports Child's goal change from reunification to adoption. Gale testified Child's goal of reunification with Mother was inappropriate. *See* N.T. TPR Hearing, 11/6/23, at 211. Child was removed from Mother's home over three years ago, and Mother has made minimal efforts for reunification. *See id.* Mother has made very little progress in alleviating the circumstances that necessitated the original placement. Changing the goal to adoption is appropriate for Child's stability, safety and welfare, particularly where there are multiple resources available to adopt her. *See id.* at 212.

The court did not abuse its discretion in changing Child's permanency goal to adoption. We affirm the order changing Child's permanency goal from

- 18 -

reunification to adoption and the decree involuntarily terminating Mother's parental rights.

Order and decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/4/2024